## N. R. LINCOLN v. GREAT NORTHERN RAILWAY COMPANY, a Corporation.

(144 N. W. 713.)

**Easement — adverse and exclusive possession — pleadings — railways — private crossing.**

Evidence and pleadings examined, and *held* that plaintiff has not established his right to an easement in a certain private crossing from the right of way of the defendant company, the complaint, answer, and evidence failing to show an adverse and exclusive possession to the said tract.

Opinion filed December 18, 1913.   On rehearing January 3, 1914.

Appeal from the District Court of Grand Forks County, *Templeton,* Judge.

Affirmed.

*W. J. Mayer,* for appellant.

All material allegations of the complaint not controverted by the answer shall, for the purposes of the action, be taken as true.   Rev. Codes 1905, § 6878.

A right of way incident to land is an easement.   Rev. Codes 1905, §§ 4926–4928.

All easements are created by grant.   The grant may be direct and express, or certain facts and conditions may lead to a conclusive presumption that it exists.   10 Am. & Eng. Enc. Law, 409.

An easement is a species of real property.   Rev. Codes 1905, §§ 4705, 4706, 4708.

Private property shall not be taken or damaged without just compensation.   N. D. Const. § 14, art. 1.

Owner of servient tenement cannot alter the character of the easement, even though no damage is occasioned to the dominant estate. 10 Am. & Eng. Enc. Law, 429; Dickenson v. Grand Junction Canal Co. 15 Beav. 260; Gregory v. Nelson, 41 Cal. 278, 12 Mor. Min. Rep. 124; Ballard v. Butler, 30 Me. 94; Merritt v. Parker, 1 N. J. L. 460; Johnston v. Hyde, 32 N. J. Eq. 455.

The owner of any estate in a dominant tenement may maintain an

action for enforcement of an easement attached thereto. Rev. Codes, § 4795; Stallard v. Cushing, 76 Cal. 472, 18 Pac. 427; 10 Am. & Eng. Enc. Law, 431; Hastings v. Livermore, 7 Gray, 194.

The "use" of property which might give rise to an easement by prescription may be "exclusive" in the required sense, even though participated in by the owner of the servient tenement. 22 Am. & Eng. Enc. Law, 1200, ¶ 8, 1203, and cases cited.

*Murphy & Duggan,* for respondent.

The basis of a claim of adverse possession must be color of title or claim of right in hostility to the owner. Schrimper v. Chicago, M. & St. P. R. Co. 115 Iowa, 35, 82 N. W. 916 (reconsidered and affirmed in 115 Iowa, 42, 87 N. W. 731); Hoban v. Cable, 102 Mich. 206, 60 N. W. 466; Deerfield v. Connecticut River R. 144 Mass. 325, 11 N. E. 105; Dunham v. New Britain, 55 Conn. 378, 11 Atl. 354; Kittaning Academy v. Brown, 41 Pa. 269.

Possession, in its inception permissive, is presumed to so continue. Smith v. Miller, 11 Gray, 145.

No adverse title was in the plaintiff. Cameron v. Chicago, M. & St. P. R. Co. 60 Minn. 100, 61 N. W. 815.

An easement of way cannot be acquired by prescription unless the use was under claim of right, and with the knowledge of the owner of the servient estate. Davis v. Cleveland, C. C. & St. L. R. Co. 140 Ind. 468, 39 N. E. 495.

It is necessary that the *use* should be under an assertion of right, and not simply a *user* under a naked license. Parish v. Kaspare, 109 Ind. 586, 10 N. E. 109.

An entry of land by permission of the owner cannot be changed into an adverse entry by *use alone.* Butler v. Bertrand, 97 Mich. 59, 56 N. W. 342.

In the absence of acts of disseisin, the presumption is that such entry and use are in subordination to the true owner. 1 Cyc. 1145, and cases cited.

Continuous use of a private way *by permission* will not ripen into a *hostile right.* Pennsylvania R. Co. v. Hulse, 59 N. J. L. 54, 35 Atl. 790.

To transform a permissive use into an adverse one, there must be *positive assertion* of a *right* hostile to the rights of the owner, and such

assertion must be brought to his attention. Hurt v. Adams, 86 Mo. App. 73; Minneapolis Western R. Co. v. Minneapolis & St. L. R. Co. 58 Minn. 128, 59 N. W. 983.

Appellant has been a mere licensee. Joint occupancy, one having title and the other having no title, it will be presumed that possession of him who has no title will be in subordination to the one holding title. Whittington v. Doe ex dem. Wright, 9 Ga. 23; 1 Cyc. 1145, and cases in notes 63 and 64.

It is settled that every presumption should be made in favor of a possession in subordination to the title of the true owner. 1 Cyc. 1145, note 65.

Use of a way over land of another does not constitute adverse possession of land used, *where it is also used by the owner;* nor does it in any sense give rise to an easement. Long v. Mayberry, 96 Tenn. 378, 36 S. W. 1041.

A railroad company has no power to dispose of its property to the prejudice of the proper conduct of its business. It is quasi public in its nature. Pennsylvania R. Co. v. Hulse, 59 N. J. L. 54, 35 Atl. 791; Turner v. Fitchburg R. Co. 145 Mass. 433, 14 N. E. 631.

A railroad right of way is such a public use as to prevent the running of limitations, or the acquisition of adverse title thereto by prescription. Southern P. Co. v. Hyatt, 132 Cal. 240, 54 L.R.A. 522, 64 Pac. 272; Jones, Easements, 232; San Francisco, A. & S. R. Co. v. Caldwell, 31 Cal. 371; Moran v. Ross, 79 Cal. 159, 21 Pac. 547; Northern P. R. Co. v. Townsend, 190 U. S. 267, 47 L. ed. 1044, 23 Sup. Ct. Rep. 671; Northern P. R. Co. v. Ely, 197 U. S. 1, 49 L. ed. 639, 25 Sup. Ct. Rep. 302.

BURKE, J. About the year 1881 the St. Paul, Minneapolis, & Manitoba Railway was built from St. Paul to Winnipeg, passing through the village of Manvel, in Grand Forks county, Dakota territory, and crossing the Turtle river about a mile north of the village. Between the town and the river a tract of land was owned by one Gould, who deeded a right of way 100 feet in width through the said tract, to the said railway company. At the same time the railway company established a private crossing over the said railway and connected the two portions of the tract of land owned by Gould, severed

by the line of the railway.  Thereafter, the Great Northern Railway Company succeeded to the interest of the older railway company, and the plaintiff herein, through various deeds of conveyance, succeeded to the interest of Gould in all said tract of land lying west of said right of way. At the time of the building of the said private crossing, the grade was only 2 feet in height, and the crossing therefore presented but a slight grade.  About the year 1908 the bridge over the Turtle river was replaced, and in order to render the same safe from floating ice was raised about 4 feet.  As the said private crossing was located but 1,000 feet from the bridge, the grade of the railway was necessarily raised at the point of the crossing.  This rise is given by the various witnesses to be about 3 feet above the old grade.  The defendant company graveled the new crossing and improved the same as much as they possibly could, but, owing to the presence of a public highway along the east side of the railway, it was impossible to extend the grade far enough away from the railway to give as gradual an approach as had obtained prior to the said elevation.

Plaintiff brings this action in equity to compel the railway company to reduce the elevation of the tracks at the point of the crossing so as to present the same level and condition as had existed during the twenty years prior to the change.  The complaint, after alleging the incorporation of the defendant and the ownership of the land, alleges that the earlier railway company had granted to the said Gould, plaintiff's predecessor in interest, a private way appurtenant to their said land crossing the said strip of land owned by it and over its roadbed and railroad tracks, 15 feet in width and extending from the easterly boundary of plaintiff's land and the westerly boundary of the public highway; that immediately thereupon the railway company graded approaches, and has ever since maintained said private crossing, and that for more than twenty years the plaintiff and his grantors have enjoyed the actual and beneficial use of said crossing, and that said use has been open, notorious, peaceful, continuous, uninterrupted, and adverse, and was enjoyed with full knowledge and acquiescence of the said defendant; that the said grade did not exceed a height of 2 feet above the average level of the ground, and that the said crossing was safe and convenient for use; that during the summer of 1908 the defendant wrongfully and unlawfully interfered with and obstructed

plaintiff's right of way over said railway by raising said grade, thus rendering the said crossing extremely unsafe and difficult. Wherefore plaintiff demanded judgment that the said grade be declared a nuisance and lowered to its former level and condition. The answer of the defendant admits the incorporation of the company and the ownership of the land by plaintiff, and admits "that there has been a private crossing at or near the point described in the complaint for a great many years, but denies the allegations of said complaint in reference to the same having been interfered with or obstructed by this defendant, and in this behalf alleges the fact to be that said crossing now is, and has been at all times, in proper shape and fit for use for crossing purposes." Trial was had in the court below and resulted in a dismissal of the action. Plaintiff appeals and demands trial *de novo* in this court.

(1) The first point to be settled in this case is one of interpreting the pleadings. Plaintiff insists that, upon the admission of the answer for the purposes of this trial, it conclusively appears that he has such an interest in the crossing aforesaid that arises to the dignity of easement in the land, which cannot be interfered with by the defendant without bringing condemnation proceedings for that purpose. With this contention we cannot agree. Admitting all of the allegations in the complaint not specifically denied by the answer, it would only appear that the defendant company had built and maintained for the use of the plaintiff and his predecessors a private crossing over its tracks and across its railway, and that the same had been so maintained for a period of more than twenty years, under a grant from the older company.

It is plaintiff's contention that he has acquired some interest in the real estate itself, and this action is not for damages, but to enforce plaintiff's rights in the strip of land 15 feet in width which crosses the defendant's tracks. Appellant cites §§ 4926–4928, Rev. Codes 1905, in support of his contention. The said sections read as follows: Section 4926: "Title by occupancy. Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession." Section 4927: "Prescription. Occupancy for the period prescribed by the Code of Civil Procedure or any law of this state, as sufficient to bar

an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all." Section 4928: "Titles to real property. All titles to real property vested in any person or persons who have been, or hereafter may be, in actual open adverse and undisputed possession of the land under such title for a period of ten years, and shall have paid all taxes and assessments legally levied thereon, shall be and the same are declared good and valid in law, any law to the contrary notwithstanding."

The complaint and answer taken together do not show that the possession of the railway company to this crossing has been in any manner ousted. The statement in the complaint that the land has been used as a crossing is an admission that the said right of way has during all the said time been in use for the passage of trains. The allegations of the complaint that the said grade was raised are a further admission to the same effect, so it stands admitted in the case, from the pleadings themselves, that during all of the time of the alleged prescription, defendant was using the said crossing the same as it was any other portion of its track. This fact at once differentiates the case at bar from all cases wherein the defendant has been completely ousted of its possession during the running of the prescriptive period.

It is true, as contended by the appellant, that the complaint alleges that plaintiff's possession has been *adverse,* but this must yield to the other portions of the complaint already mentioned. There is no allegation in the complaint that plaintiff has paid taxes upon the land during such period, and this, with other facts, shows the true interpretation of the pleading.

It requires no citation of authority to show that under the circumstances of this case the railway company lost no iota of its title to the land, and that plaintiff acquired none. Otherwise, the railway would have to entirely abolish all private crossings for fear of losing its land. However, on such occasions as the courts have passed upon the question, it has always been held that the title to the land remains in the railway company unimpaired. In Schrimper v. Chicago, M. & St. P. R. Co. 115 Iowa, 35, 82 N. W. 916, reconsidered in 115 Iowa, 42, 87 N. W. 731, it is said: "The basis of a claim of adverse possession must be color of title or claim of right in hostility to the owner, and if it be based on a statutory duty, it is simply permissive, and lapse

of time will not ripen it into a title." This decision was based upon a law requiring railway companies to maintain crossings where one owner possessed lands each side of the track, but is equally applicable in cases where the crossing is maintained by a private agreement with the landowner or as a matter of convenience to its patrons. In fact, in the case at bar, it is more than likely that this crossing was initially instituted in compliance with the law, but through an oversight of the pleader the answer does not deny the allegation to the effect that the railway company granted a private way across the said tracks. Thus, in Hoban v. Cable, 102 Mich. 206, 60 N. W. 466, the crossing was put in after such an agreement, and it was there held that there could be no adverse title where the use had been permissive. In Dunham v. New Britain, 55 Conn. 378, 11 Atl. 354, the plaintiff had a written license to use a certain body of water owned by the municipality. This right he enjoyed for a great many years and claimed the same to be perpetual by prescription. Later the city ousted him, and the supreme court of that state held that a permissive use could not ripen into a prescriptive right. See also Towne v. Nashua & L. R. Co. 124 Mass. 101; Deerfield v. Connecticut River R. Co. 144 Mass. 325, 11 N. E. 105; Smith v. Miller, 11 Gray, 145; Cameron v. Chicago, M. & St. P. R. Co. 60 Minn. 100, 61 N. W. 815; Davis v. Cleveland, C. C. & St. L. R. Co. 140 Ind. 468, 39 N. E. 495; Parish v. Kaspare, 109 Ind. 586, 10 N. E. 109; Butler v. Bertrand, 97 Mich. 59, 56 N. W. 342; Pennsylvania R. Co. v. Hulse, 59 N. J. L. 54, 35 Atl. 790; Hurt v. Adams, 86 Mo. App. 73; Whittington v. Doe ex dem. Wright, 9 Ga. 23; Long v. Mayberry, 96 Tenn. 378, 36 S. W. 1041; Turner v. Fitchburg R. Co. 145 Mass. 433, 14 N. E. 631; Southern P. Co. v. Hyatt, 132 Cal. 240, 54 L.R.A. 522, 64 Pac. 272; Venable v. Wabash Western R. Co. 112 Mo. 103, 18 L.R.A. 68, 20 S. W. 493; San Francisco, A. & S. R. Co. v. Caldwell, 31 Cal. 371; Moran v. Ross, 79 Cal. 159, 21 Pac. 547; Northern P. R. Co. v. Townsend, 190 U. S. 267, 47 L. ed. 1044, 23 Sup. Ct. Rep. 671; Northern P. R. Co. v. Ely, 197 U. S. 1, 49 L. ed. 639, 25 Sup. Ct. Rep. 302.

In short, appellant's whole claim to equity is based upon the claim of ownership of an easement in the defendant's right of way, which he claims has not been denied, and is therefore admitted by the defendant. Holding, as we do, that the allegations of the complaint,

taken as a whole, show that such easement does not exist, plaintiff's argument necessarily falls.

Upon all of the evidence, we would probably hesitate to hold that the crossing had been injured in any manner not justified by the exigencies of the case, but in view of the fact that plaintiff has not proven his right to the land in question, excepting the permissive one to use the private crossing supplied by the defendant, it follows that he cannot maintain an action to compel the lowering of the tracks to their former level. The action of the trial court in dismissing the action was correct and is accordingly affirmed.

## On Rehearing. (Filed January 3, 1914.)

Appellant has filed a petition for rehearing in which he complains that this court has placed too narrow an interpretation upon his complaint. The wording of the complaint is that the older railroad company "granted a private way over its roadbed and railway tracks." The answer admits an existence of a "private way." However, the railway company had no right to grant any easement in the land inconsistent with its own use of the right of way for railroad purposes. This for the reason that the railroad company is itself a public servant and its own interest in the land is largely in the nature of an easement. Having no right to grant the easement as interpreted by plaintiff, it certainly had no right to admit in its pleadings that the grant had been made. The court in its first opinion held that the allegations of the complaint should be construed in connection with this legal principle, and that plaintiff had therefore merely alleged a right to use the said crossing subject to all of the rights of the railway company to use the same for its own purposes. If the complaint is not given this interpretation, it is demurrable. The court adheres to the former holding that plaintiff's pleadings (as above construed) do not allege an easement superior to the right of the railway company to make necessary alterations in the elevation of its tracks. The evidence shows conclusively that the railway company made only such changes in the grade as the interest of good railroading demanded, and that the crossing was left in as good a condition as the railway company could leave it, and is in good condition as a highway and usable

as a crossing. The present track of the railroad company at the point of the crossing is about 5 feet above the level of the prairie. The ordinary public roads are graded often as high as this, and if plaintiff desires to grade his road on his own side, he can have nearly a level haul for all of the grain hauled from the farm. The rehearing is denied.