2007 ND 127

**HOME OF ECONOMY, a North Dakota Corporation, Plaintiff and Appellant**

v.

**BURLINGTON NORTHERN SANTA FE RAILROAD, a National Railroad Corporation, Defendant and Appellee.**

No. 20070002.

Supreme Court of North Dakota.

July 27, 2007.

Garry A. Pearson, Pearson Christensen & Clapp, PLLP, Grand Forks, N.D., for plaintiff and appellant.

Stephen W. Plambeck, Nilles, Ilvedson, Stroup, Plambeck & Selbo, Ltd., Fargo, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1]   Home of Economy appeals from a summary judgment dismissing its action for damages and for an injunction to require Burlington Northern Santa Fe Railroad ("BNSF") to reopen a grade crossing in Grand Forks.  We hold N.D. Const. art. XII, § 13, and *Nowling v. BNSF Ry.*, 2002 ND 104, 646 N.W.2d 719, do not preclude Home of Economy's claim for a prescriptive easement for a public road under N.D.C.C. § 24–07–01 and there are disputed factual issues about adverse and hostile use under that statute.  We reverse and remand.

I

[¶ 2]   In June 2003, without obtaining permission from any public entity or Home of Economy, BNSF closed a grade crossing in Grand Forks that provided access from State Mill Road across a spur line to property referred to by the parties as "the Olson property."  Home of Economy purchased the Olson property, which is west

of the spur line and immediately adjacent to Home of Economy's property, from Clifford Olson in 1994. According to Olson, his family had operated a family business on the Olson property since 1925, and a 30–foot–wide road from State Mill Road across the grade crossing had provided the only access to the Olson property from the 1920s to the 1950s. In the early 1950s, Highway 81 was routed to the west of the Olson property, providing a second method of access to the Olson property, and thereafter, customers to the Olson property used each access equally. According to Olson, BNSF maintained the access road from State Mill Road to the spur line, and his family maintained the road on the west side of the spur line. Olson testified by deposition that he placed a culvert in the access road on the west side of the spur line to facilitate drainage, and BNSF occasionally replaced planks in the grade crossing. There was evidence that BNSF runs between 40 and 70 railroad cars per day on the spur line.

[¶ 3] According to Wade Pearson, a vice president for Home of Economy, he received a telephone call from a BNSF representative in 1994, seeking to close the grade crossing. Wade Pearson informed the BNSF representative that BNSF could not close the grade crossing, but Pearson agreed to the placement of a stop sign at the crossing. According to Wade Pearson, the access road was approximately 30 feet wide, BNSF had maintained the grade crossing to the east edge of the Olson property, and there were planks placed on either side of and in the middle of the spur line. According to Scott Pearson, a vice president for Home of Economy, the access road from State Mill Road is essential to Home of Economy in the event of a restriction or closing of Highway 81, and many Home of Economy customers use the access road because it is quicker and easier than using Highway 81.

According to both Scott and Wade Pearson, Home of Economy's principle motivation for purchasing the Olson property in 1994 was to obtain access from State Mill Road to Home of Economy's store.

[¶ 4] Home of Economy sued BNSF in North Dakota district court for damages and to reopen the crossing, alleging an easement for access from State Mill Road had continuously existed across the grade crossing to the Olson property since the 1920s. The district court granted BNSF's motion to dismiss Home of Economy's action, concluding the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") vested jurisdiction over the regulation of railroad operations in a federal agency, the Surface Transportation Board, and preempted the North Dakota district court's jurisdiction over Home of Economy's lawsuit. In *Home of Economy v. Burlington Northern Santa Fe R.R.*, 2005 ND 74, ¶ 1, 694 N.W.2d 840, we reversed and remanded, concluding the "ICCTA does not preempt state jurisdiction over grade crossings." We declined to address BNSF's argument that Home of Economy's claim for an easement across the right-of-way of an operating railroad was precluded by N.D. Const. art. XII, § 13, and *Nowling*, 2002 ND 104, 646 N.W.2d 719, because the district court had not addressed that issue. *Home of Economy*, at ¶ 18.

[¶ 5] On remand, the district court granted summary judgment for BNSF, concluding BNSF's railroad right-of-way is a public road under N.D. Const. art. XII, § 13, and *Nowling*, 2002 ND 104, 646 N.W.2d 719, and an easement by prescription for a public road over the railroad right-of-way may not be granted because that use of the land would be inconsistent with BNSF's use of the right-of-way for railroad purposes. The district court decided that even if N.D. Const. art. XII,

§ 13, and *Nowling* allowed an action for an easement by prescription over BNSF's right-of-way, Home of Economy had presented no evidence to establish that those who traveled over the grade crossing have asserted a right that was hostile to BNSF. The court said the public's use of the grade crossing was permissive and Home of Economy failed to establish an easement by prescription. The court decided there was not an easement by necessity because there was another means of access to the property. The court also ruled there was not an easement by estoppel, because Home of Economy presented no evidence that BNSF had communicated to Home of Economy that an easement existed at the grade crossing.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 7] We consider the issues raised in this appeal in the posture of summary judgment, which is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. *Johnson v. Nodak Mut. Ins. Co.*, 2005 ND 112, ¶ 9, 699 N.W.2d 45. A party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Green v. Mid Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257. A party resisting a motion for summary judgment cannot merely rely on the pleadings or unsupported conclusory allegations, but must present competent

admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact. *Beckler v. Bismarck Pub. Sch. Dist.*, 2006 ND 58, ¶ 7, 711 N.W.2d 172. On appeal, we view the evidence in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551. Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Johnson*, at ¶ 9.

## III

[¶ 8] Home of Economy argues the district court erred in granting summary judgment, because the public's use of the road was either without BNSF's permission, which constitutes an easement by prescription under N.D.C.C. § 24–07–01, or with BNSF's permission, which constitutes an easement by estoppel. BNSF responds a railroad right-of-way cannot be lost to adverse possession, acquiescence, prescription, or estoppel under *Nowling*, and alternatively, Home of Economy failed to prove the essential elements of its claims for an easement by prescription or an easement by estoppel.

[¶ 9] In *Nowling*, 2002 ND 104, ¶¶ 2–3, 646 N.W.2d 719, private landowners sued a railroad and its lessee under the doctrines of adverse possession and acquiescence to quiet title to a rectangular tract of land that was part of the railroad's operating line. The landowners alleged they, or their predecessors in interest, had been in actual, open, hostile, continuous, and exclusive possession of the disputed tract of

land for more than 20 years and were entitled to ownership of the land by adverse possession. *Id.* at ¶ 3. They also alleged a road had been the boundary between their land and the railroad's land for 100 years and the railroad's silence constituted acquiescence in the road's serving as the boundary between the parties' land. *Id.* The district court concluded the parties had acquiesced in the boundary between their property and quieted title to the landowners. *Id.* at ¶ 4. We reversed the judgment quieting title to the landowners, concluding a railroad right-of-way was a public highway under N.D. Const. art. XII, § 13, which could not be taken by adverse possession or the related doctrine of acquiescence. *Nowling,* at ¶ 14. We said a common thread from cases with a constitutional provision similar to N.D. Const. art. XII, § 13, is that a railroad right-of-way for an operating railroad line is a public highway that may not be taken by adverse possession, or the related doctrine of acquiescence. *Nowling,* at ¶¶ 11, 14.

[¶ 10] In *Nowling,* 2002 ND 104, ¶ 7, 646 N.W.2d 719, we cited *Lincoln v. Great Northern Ry. Co.,* 26 N.D. 504, 511, 144 N.W. 713, 715 (1914) (on petition for rehearing), for the principle that a railroad had no right to grant an easement inconsistent with its own use of a right-of-way for railroad purposes, because the railroad was itself a public servant and its own interest in the land was largely in the nature of an easement. In *Lincoln,* a landowner sought to compel a railroad to reduce the elevation of its track at a private grade crossing. The landowner claimed he had acquired an interest in the railroad property and sought to enforce his claim in the private grade crossing. This Court concluded the landowner had not proven a prescriptive right to a private crossing. *Lincoln,* 26 N.D. at 509–11, 144 N.W. at 714.

[¶ 11] *Nowling* involved a private claim for ownership of a tract of land under the related doctrines of adverse possession and acquiescence, and *Lincoln* involved a claim for a prescriptive right to a private grade crossing. Moreover, *Nowling* involved an action for adverse possession and to establish a boundary by acquiescence, both of which result in a change in title to real property. In contrast, Home of Economy's action involves a claim for a prescriptive easement for a public road across a railroad's right-of-way. In other contexts, this Court has recognized that a public road may cross a railroad's public highway. *See City of Grafton v. St. Paul M. & M. Ry.,* 16 N.D. 313, 316–19, 113 N.W. 598, 599–600 (1907) (action by municipality to condemn property across railroad right-of-way for street purposes). We have also said that an easement grants a right to nonexclusive use of land for a specific, limited purpose, *Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.,* 2005 ND 118, ¶ 11, 698 N.W.2d 478, while a valid claim for adverse possession confers title to the claimant. *Gruebele v. Geringer,* 2002 ND 38, ¶ 10, 640 N.W.2d 454. Other courts have recognized the difference between a prescriptive use of land that culminates in an easement and adverse possession that creates a change of ownership. *Johnson v. Kaster,* 637 N.W.2d 174, 178 (Iowa 2001); *Newell Rod & Gun Club, Inc. v. Bauer,* 409 Pa.Super. 75, 597 A.2d 667, 669–70 (1991). *See* 16 Richard R. Powell, *Powell on Real Property* § 91.01[3] (2007); 25 Am.Jur.2d *Easements and Licenses* § 49 (2004). One recognized authority has explained that although adverse possession and prescription are related, adverse possession differs from prescription:

The terms "adverse possession" and "prescription" differ from each other primarily in regard to the kinds of land

interests acquirable under the two processes. On the one hand, adverse possession concerns itself chiefly with the acquisition of a present possessory estate, that is, fee simple absolute or a possessory interest of more restricted duration. Prescription, on the other hand, concerns itself wholly with the acquisition of rights in the land of another, such as easements.

16 *Powell on Real Property*, at § 91.01[3].

[¶ 12] Section 24–07–01, N.D.C.C., authorizes public roads by prescription and provides that "[a]ll public roads and highways within this state which have been or which shall be open and in use as such, during twenty successive years, hereby are declared to be public roads or highways and confirmed and established as such whether the same have been laid out, established, and opened lawfully or not." Under that provision, the public acquires an easement of passage and the remaining interest in the property stays with the owner of the fee. *Casey v. Corwin,* 71 N.W.2d 553, 555 (N.D.1955). The plain language of N.D.C.C. § 24–07–01 says roads meeting the requirements of that statute are declared to be public roads "and established as such whether the same have been laid out, established, and opened lawfully or not." Under prior statutory language, this Court recognized a public highway need not be opened by officials and a public road may be opened by the public's use of the road. *Kritzberger v. Traill County,* 62 N.D. 208, 212, 242 N.W. 913, 915 (1932) (statute provided all public highways that have been or may hereafter be used as such, for twenty years or more, shall be deemed public highways).

■ [¶ 13] An easement for a public road was not at issue in either *Nowling* or *Lincoln,* and the foregoing authorities demonstrate that a proceeding under N.D.C.C. § 24–07–01 is an action that rec-

ognizes and authorizes the enforcement of a prescriptive easement for a public road "whether the same has been laid out, established and opened lawfully or not." Although a railroad right-of-way for an operating railroad line is a public highway under N.D. Const. art. XII, § 13, we conclude that provision and *Nowling* do not preclude an action for an easement by prescription for a public road across BNSF's spur line under N.D.C.C. § 24–07–01.

■ [¶ 14] Under N.D.C.C. § 24–07–01, a party asserting the existence of a public road by prescription has the burden of establishing by clear and convincing evidence the general, continuous, uninterrupted and adverse use of a road by the public under a claim of right for 20 years. *Mohr v. Tescher,* 313 N.W.2d 737, 739 (N.D. 1981); *Backhaus v. Renschler,* 304 N.W.2d 87, 89 (N.D.1981); *Berger v. Berger,* 88 N.W.2d 98, 100–03 (N.D.1958).

[¶ 15] In *Berger,* 88 N.W.2d at 100–03 (citations omitted), this Court explained the type of use needed to establish a public road by prescription:

Mere user of land by the public as a highway is insufficient of itself to establish a highway by prescription or long use. The user must be adverse and hostile to the rights of the owners; and mere travel by the public does not of itself constitute adverse use of the property by the public. Regardless of how long it is continued, a user by license or permission of the owner of the land sought to be impressed with the public easement of travel is not adverse and affords no basis for prescription. . . .

Permissive use has reference to the conduct of the landowner in acquiescing and consenting that the road be traveled by the public while adverse user imports an assertion of right on the part of those

traveling the road, hostile to that of the owner. The hostile use of a road over privately owned land necessary to establish a prescriptive right means a use inconsistent with the owner's right to exclusive use. It does not imply enmity or ill will and is consistent with friendly relations between user of the road and landowner....

To establish a public way by prescription it is necessary for the plaintiff to prove an adverse use of the land which had continued for more than 20 years under a claim of right and with the acquiescence of the defendants or their predecessor in title. The mere fact of the user by the public for the period required to establish a public way, raises no presumption that such use is adverse. To establish such a use a further fact must be proved, or admitted, that the general public used the way as a public right; and that it did, must be proved by facts which distinguish the use relied on from rightful use by those who have permissive right to travel over the private way. In this last case it is said:

"If all the evidence which was introduced was equally consistent with the view that the uses relied on were of the latter character, (permissive use), the plaintiff failed to sustain the burden of proof resting upon him to show a use under a claim of right."

■ [¶ 16] Here, in the posture of a motion for summary judgment, the district court decided Home of Economy had not presented any evidence that those who have traveled over the grade crossing have asserted a right that is adverse and hostile to BNSF and that the public's use of the crossing was permissive. Although the use by the public for the period required to establish a public road does not raise a presumption that the use is adverse, *Berger*, 88 N.W.2d at 103, the issue of adverse

and hostile use is ordinarily a question of fact. *Hartlieb v. Sawyer Twp. Bd.*, 366 N.W.2d 486, 488 (N.D.1985); *Mohr*, 313 N.W.2d at 739; *Backhaus*, 304 N.W.2d at 90. Viewing the evidence in the light most favorable to Home of Economy, we conclude the district court erred in deciding this issue in the context of a summary judgment.

## IV

[¶ 17] Home of Economy also argues the public's use of the road was either adverse and without BNSF's permission, which constitutes an easement by prescription, or with BNSF's permission, which constitutes an easement by estoppel. Home of Economy thus asserts there are disputed factual issues about its claim for an easement by estoppel.

■ [¶ 18] A party claiming an easement by estoppel must show a representation was communicated to the promisee, the representation was believed, and there was a reliance upon the communication. *Epstein Family Partnership v. Kmart Corp.*, 13 F.3d 762, 774–75 (3rd Cir.1994); *Exxon Corp. v. Schutzmaier*, 537 S.W.2d 282, 285 (Tex.Civ.App.1976); 25 Am.Jur.2d *Easements and Licenses*, at § 15. See *Hille v. Nill*, 58 N.D. 536, 548, 226 N.W. 635, 639 (1929) (easement may be created by estoppel and grantor's representations that grantee would have passageway were sufficient to estop grantor from denying grantee use of street).

[¶ 19] Here, the district court decided Home of Economy had not provided any evidence that BNSF specifically communicated to Home of Economy that an easement existed at the grade crossing. The court further decided there was no evidence that had such a representation been communicated and believed, any reliance was detrimental to Home of Economy be-

cause there was another access to Home of Economy's property from Highway 81.

■ [¶ 20] This is not a boundary dispute in which acquiescence may be sufficient to establish the boundary between adjacent property. *See Fischer v. Berger*, 2006 ND 48, ¶¶ 11–13, 710 N.W.2d 886 (because permission of owner is fatal to claim for prescriptive use, acquiescence is not applicable to claim for easement by prescription for trail across another's property). Viewing the evidence in the light most favorable to Home of Economy, however, we believe the evidence of the 1994 telephone call from BNSF to Home of Economy seeking to close the grade crossing, the denial of the request by Home of Economy, and the agreement to the placement of a stop sign at the crossing raises a disputed issue of material fact about whether or not BNSF, in seeking and receiving permission for the stop sign, communicated to Home of Economy that an easement existed at the grade crossing. According to Wade Pearson, the telephone call was made in 1994, the stop sign was erected shortly thereafter, and the crossing remained open until June 2003. This evidence supports an inference that Home of Economy relied upon its communications with BNSF to establish an easement by estoppel at the grade crossing. We therefore conclude the district court erred in granting summary judgment on Home of Economy's claim for an easement by estoppel.

V

■ [¶ 21] BNSF nevertheless argues the district court's dismissal should be affirmed because the North Dakota Public Service Commission has primary jurisdiction to establish and regulate grade crossings in North Dakota. BNSF argues Home of Economy could have petitioned the Public Service Commission, the North Dakota Department of Transportation, the City of Grand Forks, or some other road authority to establish a public road and grade crossing for access from State Mill Road to the Olson property. The statutory procedures for opening and vacating roads also authorize a proceeding before the Public Service Commission under N.D.C.C. § 24–09–10 to vacate a grade crossing. *See Great North. Ry. Co. v. McDonnell*, 77 N.D. 802, 812–13, 45 N.W.2d 721, 725–26 (1950) (recognizing party may file proceeding with Public Service Commission for vacation of grade crossing at public highway). Although our statutes do not preclude a proceeding to vacate a grade crossing, BNSF did not raise an issue about primary jurisdiction in the district court, and we decline to address that issue in this appeal. *See Riemers v. Omdahl*, 2004 ND 188, ¶ 21, 687 N.W.2d 445 (failure to raise issue in district court precludes party from raising issue for first time on appeal).

VI

[¶ 22] We conclude there are disputed issues of material fact regarding adverse and hostile use under N.D.C.C. § 24–07–01, and we reverse and remand for proceedings consistent with this opinion.

[¶ 23] DOUGLAS L. MATTSON, D.J., GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 24] The Honorable DOUGLAS L. MATTSON, D.J., sitting in place of CROTHERS, J., disqualified.